organ Insurance Company. Good morning, Your Honors. May it please the Court, Ed Joyce from Jones Day, on behalf of the appellant, the Madeline This appeal involves or asks the question about an insurance policy that provides coverage for losses caused by an intense coastal windstorm. We know it as either Hurricane Sandy or Superstorm Sandy, which hit in 2012. And this is, it's undisputed that this is the classic example of a concurrent wind-water peril. The Court below found unambiguously that the flood exclusion barred coverage. The flood exclusion in this policy is half the story. There's an endorsement that adds a windstorm definition to the policy. Not just to the endorsement, but it adds it to the entire policy. It does three things. It defines windstorm . . . This is the document on, this is JA0321, right? Correct. The actual, the, just so you have the whole thing, the entire endorsement is 314 to 321, and there are three parts to that endorsement. The first two parts deal with changing the deductibles for property and business interruption by increasing them. The third part, and this is the big distinguishing part that makes this case different from the Katrina cases and the Fifth Circuit cases, is unlike those cases, a definition is added, not just for the endorsement, for the entire policy. The word windstorm is all throughout the policy. Windstorm is in the occurrence definition. Windstorm is listed as a specified peril with several other perils. But it is a covered peril. It's a covered peril. It's a specified peril. So it was already there. What this endorsement did besides changing the deductibles, it gave windstorm an ACC clause. I'm sorry. Say that again. I didn't hear what you said. I said that the endorsement did three things. It changed the two deductibles, as I said, the business interruption and the property deductibles, one and two. But thirdly, it added a definition for the entire policy because windstorm was already there. And in doing that, Your Honors, it added what's called, what we call in our insurance world, an ACC clause, an anti-concurrent causation clause, which says if wind is involved and there's no dispute, the court below said this was all started by wind, doesn't matter what anything else is involved, it's wind. And regardless of any other cause, and we would argue that whether it was a cause that's covered or uncovered. So that is what makes us different from the Fifth Circuit. Yes. You look at the deduction and then you get up to JAO, this page I was asking you about. 2-1. Right. And it says under definitions, the following is added. How do we know whether this, your position is that this doesn't simply refer to the changes in deductible, it overlaps the entire policy. That's correct. What's your, help me understand that position. There's a definition section in the policy. Right. So now, and I think, I forget the two other words with W, but now it's going to go in between those two words because, see, Windstorm was already in the main part of the policy. So definitions is a section in the policy, in the main part of the policy, not the endorsement, for the whole policy. It's adding a definition to the entire policy. It's not just doing it for purposes of this deductible. And that's the big difference. If you look at what we tried to do for the court in our opening brief . . . Yes, and I think Great Northern Council has conceded that it does change the definition. Their focus is, but this is only about the deductible. It's undisputed . . . sorry. It's undisputed that there's a definition section in the main part of the policy. And now this word, Windstorm, has been given this definition with this magic language, this ACC language, that makes . . . if wind is involved, which there's no dispute wind is involved, everything here is wind. But that is the operative clause. What we tried to do for the court, if you look at Exhibit B, the court below, both Magistrate Judge Brown and then Judge Deary, said, we're just like the Fifth Circuit. This clause is just like the Fifth Circuit cases. And to that point, we're not like the Fifth Circuit. If you go through Exhibit B in our brief, we take you through it, it's very clear there that the ACC clause in those deductible provisions is tied just to the deductible. It's not . . . it doesn't go into the entire policy, into a situation where you've got the peril already there to begin with. So that is one . . . that's the biggest distinguishing thing I can point out. The other thing is, Your Honor, if you look at . . . and I have it right here. If you look back a couple pages in the endorsement JA-319, Great Northern knew how to define things just for the deductible provisions. What's the page? Sure. JA-0319. Two pages back from 321. There's language there that says, as used in this endorsement, the terms, quote, specific insurance, unquote, and blanket insurance, also quoted, have the following meanings. If they wanted WinStorm to just apply to this endorsement, they should have done it here. But they added a third part, and they said, no, we're going to . . . here's the new definition for the entire policy. Your position is that this definition on 321 expands the definition under incurrence on 271. It expands the definition of WinStorm. It gives WinStorm its own ACC clause, which then, we would argue, we argue below, creates a conflict with the flood exclusion, which also has an ACC clause. So . . . In which case, this trumps the flood exclusion. Yeah. I wanted to use that word, trump.  But that is a good word. Supersedes. Supersedes is probably better. But it does trump, it does supersede, and it creates a conflict that you can't reconcile. It just . . . then, basically, we would argue the contraprofarentum should be that then the policyholder should win, but at the very least, we should go back and take discovery to find out if we have to get into the intent of what this clause is about. In the first instance, we would argue that this creates a conflict, there's this blatant ambiguity here, and we are the runner in baseball, tie goes to the runner. That's us. We're the policyholder. I think I have three minutes of rebuttal. I'll take it up then. Good morning, Your Honors. May it please the Court. Like almost all property insurance policies, Great Northern's policy includes an unambiguous flood exclusion. Great Northern's exclusion is actually more specific than most. It excludes damages caused by flood, quote, whether driven by wind or not. Both judges below correctly recognize that the flood damage claimed by Madeline is subject to that unambiguous flood exclusion. Their effort to escape the exclusion, Your Honors, would turn the policy completely on its head. The policy was plainly written to exclude all flood damage, even if caused by wind. And while it does cover other damage caused by wind, it shifts to the insured some of the risk of wind damage. That's what the deductible change does. Madeline, however, reads it as actually expanding coverage for wind damage by overriding the flood exclusion and literally all other exclusion in the policy, so long as wind is a contributing factor to the loss. That's exactly backward. Let me get you to slow down for a minute. Why is the definition expansion on 321 limited only to the deductible? Why doesn't it expand the occurrence definition on 271? So they misstate our argument slightly. We don't say it's limited only to the deductible. It's a definition, and the definition section applies to the whole policy. So it applies the definition. The definition on 321 sweeps over the entire policy? It's added to the definition section, which applies to the whole policy, but that doesn't mean anything, because all that means is that you're defining the word windstorm wherever the word windstorm appears. That's it. It doesn't appear in the insuring agreement. It's not in the coverage. It appears in two places only. One is occurrence, where the only thing that windstorm is doing in occurrence is to say if there are two weather events, two windstorms, we count them as one, that they're related. That's all it does. The anti-concurrency clause has literally nothing to do with that definition of occurrence. It's just there's two events. They become one. That's fine. The other one is in the specified peril provision, which is about the ensuing loss, and they have no argument about ensuing loss. That has no relevance here whatsoever. So defining windstorm for purposes of the ensuing loss provision or the occurrence provision tells you literally nothing about the existing coverage. Coverage in this case, Your Honors, comes from the all risks. It's an all risks policy. But is it a covered peril, windstorm? The only reason it's a covered peril, this is everything though, is that it's not excluded. It's not excluded. There's no covering insurance agreement that says windstorm is covered. That's not what it says. It's covered because it's not excluded. That's what an all risks policy is. So the insuring agreement where you look for if you want to know what's covered, you look in the insuring agreement, windstorm doesn't appear. It's not covered for that reason because the word windstorm is there and then you find a definition of windstorm somewhere else. It's covered because it's not excluded. That's how an all risks policy works. Everything in the world is covered unless the policy excludes it. What does the policy exclude? Flood damage even if caused by wind. That's everything you need to know. Now, they rely on the windstorm deductible and the argument you heard and that Your Honors have asked about with respect to the definition. What that deductible, as it's called a deductible, it's not called a coverage, windstorm coverage provision, it's called a deductible provision and they point to a provision in the policy that says while titles aren't supposed to limit the coverage, titles are just used for convenience of reference. Well, here's the policy drafters when they're coming up with a convenient description of what this thing is, they call it a deductible provision. There's not one word in that provision, Your Honors, that says we're creating windstorm coverage that overrides the flood exclusion that's perfectly unambiguous. Their argument is that this definition on 321 expanded windstorm spread through the policy and apparently omitted when you get down to windstorm does not mean, et cetera, et cetera, there's no reference to flood. Therefore, they're covered. So there's a couple of things baked into that. Go ahead. Let me start with the back part on the list of the frost and snow. Of course it didn't say flood because flood's already excluded, even when driven by wind. There's no frost exclusion. There's no snow exclusion. So you wouldn't need to put flood in the definition of windstorm. Flood is excluded categorically, whether driven by wind or not. That's what it says. It doesn't erase that. It doesn't affect it. Frost, snow, those kinds of things are important to include so that an insurer doesn't come in and argue, you know, this isn't a windstorm. This was snow, whatever. It's excluding and answering that question. Snow is not part of a windstorm. You wouldn't say flood. It's already excluded. But then look at what the provision they actually rely on is doing all the work, the anti-concurrency clause with the deductible. It only makes sense one way. What that provision says is that it — Let me follow. Give me a page reference. It's on 321. Okay. It's what the parties refer to as the anti-concurrency clause. It's described — All right. The same thing is addressed in the Katrina cases. And that provision says windstorm means, et cetera, et cetera, regardless of any other cause or event that directly or indirectly causes the event, even if such other cause or event would otherwise be covered. Right? The Penthouse case from the Fifth Circuit explains what that's doing, and it's self-evident. What that's saying is the deductible is still increased if wind is involved, even if something else is involved that would otherwise be covered. Lightning damage, whatever it might be. That's why it says, even if it would otherwise be covered. They read it and actually heard counsel this morning literally rewrite it in his description of it. They read it to say, even if such other cause or event would otherwise be excluded. That's the only way their reading would make sense if, in fact, it was supposed to be doing the work of creating coverage that doesn't otherwise exist. Their reading says, when you look at windstorm, it says, even if another cause or event, like a flood, would otherwise be excluded. That's not what it says. It says it would otherwise be covered, which makes perfect sense if all the work that that's doing is explaining how the deductible works in the presence of other causes. It literally makes no sense. Literally makes no sense if it's a coverage-creating provision, because you'd be saying it creates coverage for wind, even if there's another covered cause. It's just redundant and meaningless. But, again, it makes perfect sense if it does exactly what the fifth circuit explained in the Penthouse case, and I think also in Tupker and Katrina, that it's simply— In those cases, the definition was much more closely charged than deducted. Here, it's not. I disagree only slightly. Maybe it's kind of a semantic difference and with the much more closely. All of the substantive provisions are the same. It's just in this policy, for whatever reason, it's written to say windstorm. It turns the definition section, puts the definition in the definition section. It's just a definition section, Your Honor. It's not a coverage section. It's not a provision that says a windstorm is defined for purpose of coverage. It's a definition section to figure out what you've got. But not for a windstorm. That's the key, because it's an all-risks policy. You know it's covered if there's a windstorm already, because it's not excluded. So windstorms are covered. Lightning is covered. Everything is covered unless there's an exclusion. You don't need to understand what windstorm means to understand whether or not there's coverage. It's covered unless it's excluded. The windstorm definition applies to the whole policy, but it only applies where it matters, i.e., where the word windstorm appears and is doing some kind of work. The most relevant provision is in the deductible provision, which, after all, adds the definition, and that definition only makes sense with respect to deductible provision. The definition applies to the use of the word in the occurrence provision, the use of the word in the ensuing loss provision. The anti-concurrency clause within the definition in those sections doesn't matter. It doesn't do any work. The definition still applies. It tells you what is a windstorm for purpose of an ensuing loss. It's wind. It's wind-driven rain. Sure, it applies, but the anti-concurrency clause in those provisions isn't doing any work to create new coverage because those aren't coverage provisions. The coverage provision appears in 166 and 195, and that's a classic all-risks provision. It just says everything that's not excluded. Windstorm isn't excluded. Wind isn't excluded. Therefore, wind is covered, and we agree that it's covered. And, in fact, we paid several million dollars for wind damage. What was left was damage that all agree is solely flood damage. Is that covered? You look at the policy, the policy tells you. It's not covered because flood damage is unambiguously excluded whether driven by wind or not. That's the beginning of the answer to the question and the end of the answer. Thank you, Your Honors. Just a couple quick points. The standards we're dealing with. Let me just touch on one matter. You seem to suggest that we should permit further discovery. You made some reference to discovery when you were up the first time. And we did in our brief, too, at page 49. Yes, and what is it that you're asking for? Or what is it you think is appropriate? So if you look at page 49, again, we think in the first instance that the ambiguity should be construed in our favor as the tie going to the runner concept. But at page 49 of our brief, we set out what we were looking for, which was interpretive material about this endorsement. Because he said for whatever reason, we're starting to get into questions now of intent as what they intended. I'm asking a very mechanical district court type of question. What is it? Was this not a possibility before Judge Deering? No, there was preliminary in his protocol for the Sandy cases. We did not get into drafting history or interpretive materials. We just turned over sort of whatever each side felt was relevant. Discovery was limited by some order of the court. Absolutely correct. Did you request discovery? We did within the confines of the protocol. But the things we did ask for we didn't get that we would take up if we went back are the items on page 49, which are interpretive materials about this endorsement if they keep wanting to get into the intent or the objective of what this means. What I'm getting at ultimately is I'm curious as to what you want from us. What is the decree that you want from the Court of Appeals? We believe that, as I said, because the definition creates a conflict with these two clauses, that summary judgment should be reversed. And we think under the concept of On the theory that there were material issues available that are in dispute That's part of it. And that the policy language is ambiguous because you have this definition being added and not like the Fifth Circuit where it was all If you look at the Fifth Circuit language in Exhibit B, everything starts with this deductible provision shall apply and then you have the ACC clause. You have to construe the exclusion that they talk about in clear and mistakable way. And you can't do it here. And you have to construe the policy as a whole. The even if language that's at the end of the R windstorm definition, that's helpful for us to the extent even if it's covered elsewhere. Well, that assumes that there must be a scenario where it's not just covered covered but covered uncovered, just like what's in the other, the flood exclusion. I'll leave you with this. The Fifth Circuit We don't see all these many cases and most of them are across the street, but the typical argument we hear for what it's worth is that, well, it's ambiguous and they drafted it so we win. You seem to be, on the one hand, the tie goes to the runner. On the other hand, we have to send it back to have discovery on what this means. That is our principal argument because there wasn't any extrinsic evidence, but there is case law that sort of talks about doing both things, that you can either tie goes to the runner or there should be, at a minimum, there should be discovery. But I think in the first instance we should win tie goes to the runner. I just want to leave, if I could, just leave the court with one point. The Fifth Circuit recognized, I think, our situation. Penthouse, my adversary cited it. Penthouse, this quote, there could be the rare possibility that explicit words of coverage in a deductible interpreted in the context of the policy as a whole may establish coverage or an ambiguity thereof. That's us. And by the way, it's coverage in not just deductible, for us it's a definition that applies to the entire policy. I have nothing further. Thanks very much. Thank you. A very interesting case. Very well briefed. Well argued. Thank you. Thank you, Your Honor. We reserve the suit.